
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-13-542

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** January 8, 2014 |
| NIKKI B. DAVIS | | APPEAL FROM THE ARKANSAS |
| | APPELLANT | BOARD OF REVIEW [NO. 2013-BR-01622] |
| V. | | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and BAPTIST HOSPITAL | | |
| | APPELLEES | REVERSED AND REMANDED |

**WAYMOND M. BROWN, Judge**

Nikki Davis appeals from the Arkansas Board of Review's denial of unemployment benefits after it found that she was discharged for misconduct. Ms. Davis was hired by Baptist Health in July 1995, at which time she received notice concerning the use of drugs and the employer's practice of random drug testing. On March 18, 2013, Ms. Davis was selected for random drug testing and failed, having tested positive for acetaminophen with codeine. She was discharged from employment for having violated the hospital's policy against drug use. The Department of Workforce Services denied her request for benefits, concluding that Davis was discharged for misconduct in connection with her work. The Board of Review upheld that decision, and this appeal followed. Finding error, we reverse and remand for an award of benefits.

SLIP OPINION

On appeal, we review findings of the Board of Review and affirm if they are supported by substantial evidence.[1] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[2] We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings.[3] Even when there is evidence on which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision on the evidence before it.[4] In our review, we do not pass on the credibility of witnesses; that is a matter that is left to the Board of Review.[5]

Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board.[6] A person shall be disqualified from receiving unemployment benefits if it is determined that the person was discharged from his or her last work on the basis of misconduct in connection with the work.[7] The employer has the burden of proving by a preponderance of the evidence that an employee engaged in misconduct.[8]

"Misconduct" involves disregard of the employer's interest, violation of the employer's rules, disregard of the standards of behavior the employer has a right to expect

---

[1]*Crisp v. Dir.*, 2013 Ark. App. 219; *Bergman v. Dir.*, 2010 Ark. App. 729, 379 S.W.3d 625; *Walls v. Dir.*, 74 Ark. App. 424, 49 S.W.3d 670 (2001).
[2]*Id.*
[3]*Id.*, *Lovelace v. Dir.*, 78 Ark. App. 127, 79 S.W.3d 400 (2002).
[4]*Perdrix-Wang v. Dir.*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).
[5]*Crisp*, *supra*; *Bergman, supra*.
[6]*Thomas v. Dir.*, 55 Ark. App. 101, 931 S.W.2d 146 (1996).
[7]Ark. Code Ann. § 11–10–514(a)(1) (Supp. 2011).
[8]*Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983).

SLIP OPINION

of its employees, and disregard of the employee's duties and obligations to the employer.[9]

It requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies, ordinary negligence in *isolated* instances, or good-faith errors in judgment or discretion.[10]

We have also made clear that conduct that may well provide a sufficient basis for the discharge of an employee may not be sufficient to deny the same employee unemployment benefits. The two inquiries are entirely different. "To conclude that there has been misconduct for unemployment-insurance purposes, we have long required an element of intent: mere good-faith errors in judgment or discretion and unsatisfactory conduct are not misconduct *unless they are of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of an employer's interest.*"[11]

In this instance, Baptist could certainly discharge Davis for having violated its drug policy. Ms. Davis was randomly selected for testing, and the result of the test showed she tested positive for codeine. However, the inquiry does not end there. We must be satisfied that Davis's conduct meets the statutory definition of misconduct, in essence, that she acted intentionally.[12] In this instance, the record demonstrates otherwise.

Ms. Davis suffers from rheumatoid arthritis and is prescribed hydrocodone by her physician. Her daughter had been recently treated by her physician and was prescribed Tylenol with codeine, Tylenol-3. Ms. Davis testified at the hearing that she had inadvertently taken the wrong medication. When the result of the random drug screen

[9]*Garrett v. Dir.*, 2013 Ark. App. 113.
[10]*Id.* (Emphasis added.)
[11]*Id.* at 4. (Emphasis added.)
[12]See *Niece v. Dir.*, 67 Ark. App. 109, 992 S.W.2d 169 (1999).

was positive for codeine, Davis was asked to produce a current prescription issued to her for Tylenol-3. She explained to her employer, and again at the hearing, that she had made a mistake by taking the wrong medication. She also pointed out that her own medication, for which she has a prescription, is stronger and may contain codeine. She was terminated for having taken the Tylenol-3 without it having been prescribed for her, a violation of the employer's drug policy.

Hearing testimony included the following:

HEARING OFFICER: Does the employer policy include an option to grieve or challenge test results?

(*Company Representative*) BARROW: The policy states that once that employee is notified that she did test positive, she is allowed to turn in any prescription medicine that would verify -- justify their reason for having that type of drugs in their system. If that employee cannot prove a legal reason why that drug is in their system, then that employee is terminated.

H. OFFICER: All right. And did this situation apply to the claimant?
BARROW: Yes, ma'am. It did.
H. OFFICER: What was the claimant tested positive for?
BARROW: Sorry. She was tested positive for coc -- cocaine, I think it was.
CLAIMANT: Codeine.
BARROW: Codeine. Yes, ma'am.
H. OFFICER: And did the claimant indicate that she had a proper prescription for the drug?
BARROW: She did -- she indicated she did not have a prescription for that type of medicine -- medication.
H. OFFICER: Did she have any other explanation for why the -- the test resulted as positive for the medicine?

. . .

CLAIMANT: What I was explaining to them, I was--I have rheumatoid arthritis, so I have hydrocodone as a pain medicine. My daughter had fell in school and she has Tylenol 3, and 3 o'clock in the morning, Sunday after work, Sunday-Monday



H. OFFICER:     morning, I decided let me take some pain pill--something for pain so I can go to work. I thought I picked up my pain pills, but I accidentally picked up hers, not realizing. But I took her pain pills by accident and thought I was taking my pain pills.

H. OFFICER:     All right. Did you provide the employer the prescription for your medication?

CLAIMANT:       I told them I had it and they said because I did not have it at the time that I took the medicine, then that does not matter.

. . .

H. OFFICER:     All right. Ms. Barrow, you may conduct a cross-examination. Do you have any questions for the claimant?

BARROW:         I just have one question. Ms. Davis, you say you had a prescription for pain pills?

BARROW:         That--did that prescription contain codeine?

CLAIMANT:       Hydrocodone does.

BARROW:         I'm sorry?

CLAIMANT:       I believe hydrocodone has codeine in it--

BARROW:         Uh-huh.

CLAIMANT:       And I told them that.

BARROW:         But you said you did that. You -- you testified earlier that at the time of the drug testing, that you did not have a prescription.

CLAIMANT:       I did not have a prescription for Tylenol 3. Which is what I took.

BARROW:         Oh, okay. I'm sorry-- Forgive me, I'm sorry. I have no other question.

In a case closely analogous to this one,[13] the claimant in *Rodriguez* had undoubtedly violated Wal-Mart's policy regarding the number of moving violations. He struck a

---

[13]*Rodriguez v. Dir.*, 2013 Ark. App. 361,  and see *Walls v. Dir.,* 74 Ark. App. 424, 426–27, 49 S.W.3d 670, 672–73 (2001) (reversing Board finding no evidence of intentional violation of written policy regarding absenteeism); *B. J. McAdams, Inc. v. Daniels*, 269 Ark. 693, 600 S.W.2d 418 (Ark. App.1980) (holding that mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute applied to award of benefits to truck driver having three accidents in 11 month period of time).

yellow pole and had been placed on a three-step reprimand six months prior to the final incident leading to his discharge. In the last instance, he followed a manager's direction that his trailer was emptied, swept out, and ready to go. Without verifying that the doors were locked, Claimant drove the trailer some distance before he realized the doors were not secured. Our court held that there was no evidence that he ever intentionally violated Wal-Mart's rules so as to manifest wrongful intent or evil design or engaged in conduct from which the Board could infer wrongful intent or evil design.

Here, Davis's testimony was that the medication was taken inadvertently. She did not intend to violate the employer's work rules regarding taking or using unlawful substances or using a lawful substance contrary to law. She made a mistake. In fact, she was prescribed hydrocodone,[14] a narcotic, a drug much stronger than the codeine for which she tested positive, to treat a permanent medical condition, rheumatoid arthritis. She did not have a prescription for her use of Tylenol-3, so the fact that she took it is, strictly speaking, a violation of the employer's policy. However, her testimony and the employer's apparent acknowledgement that she inadvertently took the medication Tylenol-3 rather than her own hydrocodone, do not support the statutory definition of misconduct.

On the record presented here, we conclude there is not substantial evidence to support finding that the employee acted intentionally to violate the rules of conduct the employer had a right to expect. Ms. Davis did not engage in misconduct that arises to

---

[14]Hydrocodone is in a class of medications called opiate (narcotic) analgesics and in a class of medications called antitussives. Hydrocodone relieves pain by changing the way the brain and nervous system respond to pain. *Physicians' Desk Reference*, PDR Network, LLC. (2013).

such a level as to disqualify her from obtaining benefits under the statute. Accordingly, the decision of the Board is reversed, and the case is remanded for an award of unemployment compensation.

Reversed and Remanded.

WYNNE and HIXSON, JJ., agree.

*Nikki B. Davis*, pro se appellant.

No response.